UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHILLIP M.,[1]

       Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

Case No. 19-cv-01552-TSH

**ORDER RE: CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 23, 27

## I.    INTRODUCTION

Plaintiff Phillip M. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Nancy Berryhill, then-Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits.[2]  Pending before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 23 (Pl.'s Mot.), 27 (Def.'s Mot.).  Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the following reasons.

## II.    BACKGROUND

**A.    Age, Education and Work Experience**

Plaintiff is 44 years old.  AR 63.  During school he had a learning disability and was placed in special education.  AR 244, 374.  Plaintiff completed 11 years of school but did not

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] This action was originally brought against Acting Commissioner Nancy Berryhill.  Pursuant to Fed. R. Civ. Proc. 25(d), Andrew M. Saul was automatically substituted as the Defendant.

receive a high school diploma or GED. AR 244, 363. He has worked in construction, painting, furniture delivery, and security. *Id.* (both).

**B.    Medical Evidence**

The medical evidence of record consists of Exhibits 1F through 10F, including emergency department records from Highland Hospital; treatment records from Alameda Behavioral Health Care Services dated May 8, 2014 to November 14, 2014; treatment records from Lifelong Medical Care dated January 13, 2014 to February 18, 2015; a psychological evaluation from Dr. Lesleigh Franklin, PhD. conducted July 22, 2015 and dated August 28, 2015; a psychological consultative examination performed by Dr. Paul Martin, PhD. dated January 20, 2016; a physical internist exam conducted by Dr. Robert Tang dated January 25, 2016; treatment records from Lifelong Trust Clinic from January 21, 2016 to February 24, 2016; treatment records from Highland Hospital covering November 11, 2015 to July 17, 2017; Lifelong treatment notes from February 4, 2016 to August 1, 2017; and a questionnaire submitted by Dr. Jeffrey Seal from Lifelong Medical Care dated August 17, 2017. AR 266-438.

Plaintiff attended Lifelong Trust Clinic for primary care on September 5, 2013. AR 346. He was treated for asthma, chronic right knee pain, and depression. AR 336, 343. Nurse Practitioner Douglas Frey prescribed 30 mg of Remeron and 20 mg of buspirone per day starting on April 9, 2014. AR 335. Records from Lifelong Trust Clinic also indicate that in March, possibly of 2016, he was admitted to Summit Hospital with a closed skull fracture. AR 474.

In August and September of 2014, Plaintiff made visits to the emergency department at Highland Hospital to address a variety physical issues, including injuries suffered from being assaulted with a knife by his roommate, resulting in multiple lacerations to his face, right shoulder and left wrist, and injuries suffered during a fight with the police. AR 266-93. He reported to the emergency department on August 23, 2014 with multiple lacerations to his face, right shoulder and left wrist that he reported were a result of his roommate attacking him with a knife. AR 291.

Plaintiff was assisted by Behavioral Health Care Services ("BHCS") between May and October of 2014. AR 304-29. Staff at BHCS acquired housing for him at the Lakehurst Hotel on May 21, 2014. AR 306. Lakehurst's manager complained to BHCS staff about Plaintiff's "poor

lack of boundaries," including showing the landlord a naked picture of his girlfriend on his cell phone less than a month after acquiring housing. AR 308. On August 5, 2014, BHCS notes show they assisted Plaintiff with his move into permanent housing with a program called FACT. AR 316. The notes show he repeatedly broke the rules of his housing program, got in physical altercations with his roommate and was removed from his placement by September 22, 2014. AR 321, 323, 325.

### 1. Dr. Franklin

On July 22, 2015 Plaintiff saw Dr. Lesleigh Franklin, PhD. for a psychiatric evaluation. AR 362-68. During his interview, Plaintiff told Dr. Franklin the he used to deliver furniture but stopped due to physical injuries and that his depression makes it difficult to be around people. AR 363. Plaintiff also reported he has a history of drinking too much alcohol and still drinks, although not as much as in the past. *Id.* He reported falling off a balcony in 2010 and being beaten by the police in 2013. *Id.* He also reported severe depression since the death of his wife in 1998 and stated that it gets in the way of daily functioning. *Id.* He told Dr. Franklin that at around the age of thirteen he saw aliens in his room and that they may have inserted a chip into his chest. *Id.* Plaintiff advised he still hears voices and that they encourage him to hurt himself or others. *Id.*

In her Mental Status Exam, Dr. Franklin noted that Plaintiff walked with a cane, that he worked at a slow rate and was unable to sustain attention well enough to remember short strings of information. AR 364. Dr. Franklin noted he "displayed a childlike quality" and was tearful at times. *Id.* Plaintiff scored a full scale IQ of 48, a score below the .1 percentile of scores for peers in his age group. AR 365, 367-68. He received a score of 20 on the vocabulary subtest, which tests language development, word knowledge, and general verbal intelligence, a result in the extremely low range as compared to his peers. AR 365. He received a T score of 29 on the Block Design subtest, which tests non-verbal problem-solving skills, spatial visualization and the ability to analyze a whole and component parts, a result in the extremely low range as compared to his peers. *Id.* Plaintiff received a score of 20 on the Matrix Reasoning subtest, which tests one's ability to process visual information and abstract reasoning without requiring verbalization, a result in the extremely low range as compared to his peers. *Id.*

1   Dr. Franklin also performed the Repeatable Battery for Assessment of Neuropsychological

2   Status, which evaluates an individual's current neuropsychological status. *Id.* Plaintiff received a

3   score of 44 on the Language Index, 60 on the Visuospatial/Constructional Index, 40 on the

4   Immediate Memory Index, 46 on the Attention Index, and an overall score of 43. AR 365-66. All

5   of these scores were in the extremely low range as compared to his peers. *Id.*

6   Dr. Franklin noted that Plaintiff reported symptoms including depressed mood, loss of

7   interest, sleep disturbance, psychomotor disturbance, fatigue, feelings of worthlessness/guilt, poor

8   concentration, and suicidal ideation. AR 366. She also noted his experience of a traumatic event

9   involving fear of death or serious injury, re-experience of the event, avoidance of associated

10  stimuli and a sense of a foreshortened future, hypervigilance, and exaggerated startle response. *Id.*

11  She noted that during the interview it was clear that he was experiencing a high level of stress and

12  that he became tearful upon remembering his psychotic experiences. *Id.*

13  Dr. Franklin diagnosed Plaintiff with schizoaffective disorder, depressive type, PTSD, and

14  borderline intellectual functioning. AR 367. She concluded that Plaintiff suffered a marked

15  impairment to his ability to: understand, remember and carry out instructions; maintain attention

16  and concentration for two hour segments; perform at a consistent pace without an unreasonable

17  number of breaks; respond appropriately to changes in a routine work setting and deal with work

18  stress; and complete a normal workday/workweek without interruption from psychological

19  symptoms. AR 368. She also concluded that Plaintiff suffered a moderate impairment to his

20  ability to: understand, remember and carry out very short and simple instructions, and get

21  along/work with others. *Id.* He suffeedr mild impairment in his ability to interact appropriately

22  with the general public; accept instructions and respond appropriately to criticism from

23  supervisors; and maintain regular attendance and be punctual with customary, usually strict

24  tolerances. *Id.*

25  ### 2. Dr. Martin

26  Plaintiff attended a psychological evaluation with Dr. Paul Martin, Ph.D. on January 20,

27  2016, who conducted a mental status exam, Wechsler Adult Intelligence Scale ("WAIS-IV"), and

28  Wechsler Memory Scale ("WMS-IV"). AR 372-80. Dr. Martin did not review any records but

noted that Plaintiff reported a history of head injury, problems with memory, concentration, headaches and dizziness, and low energy, poor motivation, social withdrawal, sleep disturbance, anhedonia, crying spells, anger, irritability, and visual hallucinations involving spaceships. AR 372-73. Plaintiff's mental status exam showed a weak and dreamy mood, poor attention demonstrated by only being able to name four digits forward and three in reverse, fair fund of knowledge demonstrated by naming three out of the last five presidents, poor memory demonstrated by inability to recall any of three words after a brief delay, the ability to calculate how much money was in seven quarters, the ability to identify a similarity between an orange and banana, and the ability to understand a proverb. AR 375.

Plaintiff's WAIS-IV testing revealed a full scale IQ of 59, processing speed subtest score of 56, working memory of 63, and perceptual reasoning of 67, which were all in the extremely low range. He received a score of 70 on the verbal comprehension index, which was in the borderline range. AR 376-77. His WMS-IV results revealed scores in the extremely low range in all subtests, including visual, auditory, immediate and delayed memory, which Dr. Martin noted indicated a severe impairment with new learning and memory. AR 377-78.

Dr. Martin diagnosed Plaintiff with depression, with a need to rule out cognitive disorder, pain disorder that involves both physical and psychological factors, and cannabis abuse. AR 378. He concluded that Plaintiff suffered a moderate impairment in his ability to: perform detailed and complex tasks; maintain regular attendance; perform work activities on a consistent basis; work without special supervision; complete a normal workday or workweek without interruptions from psychological symptoms; accept instructions from supervisors; interact with coworkers and the public; and deal with usual stressors related to competitive work. AR 379. He is mildly limited in his ability to perform simple and repetitive tasks. AR 378.

### 3. Dr. Tang

On January 25, 2016, Plaintiff attended a physical evaluation with Robert Tang, M.D. that had been ordered by the agency. AR 383-86. Plaintiff advised he had not worked for five years due to a right knee fracture that required six pins/screws, he had chronic pain and ambulates using a cane, and he completed personal needs slowly while using a cane. AR 383. Plaintiff was unable

1    to perform the tandem walk or toe-heel stand due to right knee pain and Dr. Tang noted that his

2    cane was medically necessary. AR 384. Plaintiff's knee had a slow range of motion and could

3    only flex 110 degrees, as compared with 150 degrees in his left knee. *Id.* Dr. Tang noted that his

4    right knee had a surgical scar and was no more than 50% weightbearing. AR 385.

5       Dr. Tang concluded that if Plaintiff were granted the "maximum allowable breaks," he

6    would be able to/would be limited to: stand and walk up to six hours; sit without limitations; lift

7    and carry up to 20 pounds occasionally and ten pounds frequently; occasionally balance, stoop,

8    kneel, crouch, and crawl; and without limitations reach, handle, finger and feel. *Id.* He concluded

9    Plaintiff would have limitations working around heavy machinery but no limitations working

10    around dust, fumes, gases, loud noise, or chemicals. AR 385.

11       **4.**     **Dr. Seal**

12       Plaintiff was seen at the Lifelong Trust clinic at least nine times between February 4, 2016

13    and August 1, 2017. AR 447-93. He saw Jeffrey Seal, M.D. at the Lifelong Trust Clinic on

14    February 4, 2016. AR 400-03. Dr. Seal performed a psychological evaluation, diagnosing PTSD

15    and depression. AR 402. He prescribed 100 mg sertraline daily with a brief built-in week at 50

16    mg. *Id.* Dr. Seal noted that Plaintiff presented with depressed mood with sad tearful affect, mild

17    psychomotor agitation, frequent staring at the floor, and slowed speech. *Id.* He noted that while

18    Plaintiff used substances, his use appeared to be secondary to homelessness, lack of resources, and

19    self-medication of symptoms as they worsen. *Id.* Plaintiff appeared to have a low functional

20    status that was potentially related to a developmental delay. *Id.* Dr. Seal noted that his physical

21    and mental conditions have contributed to his inability to find gainful employment. *Id.*

22       Plaintiff saw Dr. Seal again on May 26, 2016, at which time he presented with depressed

23    mood, appeared sleepy, and complained about struggles with memory. AR 482-84. Dr. Seal

24    noted that an IQ test in 2010 showed an IQ of 79, in the low average, and a verbal IQ of 70, and

25    concluded based on this and his observations and record review that Plaintiff had low cognitive

26    function and would need "more support than our clinic can provide." AR 483-84.

27       On August 17, 2017, Dr. Seal filled out and signed a questionnaire regarding Plaintiff's

28    mental health and how it would impact his ability to work. AR 495-99. He noted significant

deficits in complex attention, executive function, learning and memory, language and perceptual motor or social cognition. AR 496. He also noted symptoms of sleep disturbance, decreased energy, difficulty concentrating, easy or frequent distractibility, easy fatigue, detachment from social relationships, depressed mood, appetite disturbance, thoughts of death or suicide, irritability, distrust or suspiciousness of others, difficulty organizing tasks, difficulties learning and using academic skills, avoidance of external reminders of a traumatic event, increase in arousal and reactivity, instability of interpersonal relationships, exposure to actual or threatened death or violence, and involuntarily re-experience of a traumatic event. *Id.*

Dr. Seal concluded that Plaintiff suffered from a marked impairment to his overall ability to understand remember and apply information. AR 497. In subcategories related to understanding, memory and application, he found a marked impairment in Plaintiff's ability to describe work activity to someone else, ask and answer questions including explanations, identify and solve problems, sequence multi-step activities, and use reason and judgment to make work related decisions. *Id.* Dr. Seal found a moderate impairment in Plaintiff's ability to understand and learn instructions, follow one or two step instructions to carry out a task, and recognize mistakes. *Id.* He concluded that Plaintiff suffered from a moderate impairment to his overall ability to interact with others, finding moderate impairments in all related subcategories except for asking for help when needed, for which he found a marked impairment. *Id.* He also concluded that Plaintiff suffered from a marked impairment in his overall ability to concentrate, persist or maintain pace, and marked impairment in every subcategory of concentration, except his ability to initiate and perform a known task and working close to others without creating distractions— where he found a moderate impairment. *Id.* Dr. Seal concluded that Plaintiff suffered from a moderate impairment in his overall ability to adapt or manage himself and a marked impairment in his ability to adapt to changes and manage psychologically based symptoms. AR 498. Dr. Seal reported that on average he expected that Plaintiff's combined impairments would cause him to be absent from work four days or more in an average month and be off task over 30% of the average eight-hour workday. *Id.* He opined that Plaintiff's condition could improve if his social circumstances greatly improved, but it would likely get worse in times of acute stress. AR 499. In

his statement, Dr. Seal noted that Plaintiff's symptoms of depression and PTSD had been resistant to treatment and that multiple psychological evaluations have shown he likely suffers from a cognitive disorder that severely limits his ability to regularly engage in medical care and maintain a personal routine. *Id.*

### III. SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On June 27, 2015, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning October 16, 2010. AR 159-64. On November 13, 2015, the agency denied Plaintiff's claim, finding he did not qualify for benefits. AR 79-82. Plaintiff subsequently filed a request for reconsideration, which was denied on February 23, 2016. AR 86-91. On March 29, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 92-93. Although ALJ E. Alis conducted a hearing on August 29, 2017, Plaintiff did not appear and his counsel, Alla Barkan, stated he did not know where he was because he is "chronically homeless and missing a phone." AR 47-49. The ALJ proceeded with the hearing and heard testimony from Vocational Expert ("VE") Robert Cottle. AR 53-60.

### A. Vocational Expert's Testimony

The ALJ asked the VE, based on his review of Plaintiff's file, whether Plaintiff had performed any past relevant work. AR 53. The VE testified that there was no past work that he could see. AR 54. The ALJ then asked the VE to assume a hypothetical individual with the same age and education as Plaintiff, with no past work, who is able to lift and carry twenty pounds occasionally and ten pounds frequently, and is able to walk, stand or sit for six hours out of an eight-hour workday. AR 54-55. He further added that this individual would be able to push or pull only occasionally with the right lower extremity and would need a cane for ambulation. AR 55. Additionally, this individual would be limited to occasional climbing of ramps, stairs, ladders, ropes and scaffolds, and would not be able to work around moving mechanical parts or at unprotected heights. *Id.* He added mental limitations including simple, routine tasks and making simple decisions, but with the ability to frequently interact with coworkers, supervisors and the general public "but only on a superficial level such as greeting customers or directing a customer to the nearest restroom." *Id.* He asked if there were any jobs that this hypothetical individual

would be able to perform. *Id.*

The VE testified that this hypothetical individual would be able to work as a Marker II under the Dictionary of Occupational Titles ("DOT")[3] 920.687-126 with a Specific Vocational Preparation ("SVP")[4] of 2, requiring light strength with 251,670 jobs nationwide; a hand packer DOT 559.687-074 with an SVP of 2, requiring light strength having 518,950 nationwide jobs; and bottle packager DOT 920.685-026 with an SVP of 2, requiring light strength and with 386,500 jobs nationally. AR 55. The VE verified that his testimony was based on the DOT. AR 55-56.

The ALJ then asked if the DOT addressed the level of interaction he had described in his hypothetical. AR 56. The VE testified that the DOT does not address this, but his testimony was based on his experience. *Id.* The ALJ then asked the VE why he believed an individual with the limitations he described in his hypothetical would be mentally capable of doing the job. *Id.* The VE testified that a Marker II involved "simply stamping a label or attaching a sticker" and a hand packer is "simply inserting plastic bottle caps or caps that are defective and replacing them with non-defective parts and pressing it into a box." *Id.* He testified that bottle packaging is a similarly consistent job. *Id.* The VE added that the DOT does not address the need to use a cane to ambulate, "[b]ut these jobs would be performed at a workstation instead [of] the need to be ambulating." AR 57.

The ALJ then added further limitations to the hypothetical, including limiting interactions with supervisors and co-workers to only occasionally, no working as a group or as part of a team, and only superficial interactions with the general public. *Id.* When asked if that individual would

---

[3] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.1990). The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d) (1). The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

[4] "The Dictionary of Occupational Titles lists an SVP time for each described occupation. Using the skill level definitions in 20 C.F.R §§ 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." Social Security Ruling 00-4p.

be able to perform the same work, the VE testified that marker II would still be performed without tandem work but that he would erode the number of nationwide available jobs by 40 percent. *Id.* He eliminated bottle packer because that job requires teams and testified that the nationally available jobs would be reduced by 30 percent. AR 57-58. The VE stated that his testimony was based upon his experience as a vocational rehabilitation counselor and having worked in those occupations and "placing people." AR 58.

When asked if there was a third occupation that this hypothetical individual would be able to perform, the VE answered that this individual would be able to perform the work of a Garment Sorter, DOT 222.687-014 with an SVP of 2, requiring light strength with 251,670 jobs nationwide, that he would erode by 40 percent due to the inability of the hypothetical individual to work in tandem with others. *Id.* The ALJ then added the additional limitation that the individual would require "a few reminders from supervisors throughout the day to stay on task or how to complete work," would need these reminders four times per day, and asked if this limitation would erode the occupational base any further. *Id.* The VE testified that this would not affect the job pool. *Id.* When Plaintiff's attorney asked how long these reminders would take, the VE testified that his answer was based on very brief reminders or instructions. AR 59.

When the ALJ asked how long an individual could be off task and remain employable, the VE testified that an individual would be unemployable if they were off task more than 15 percent of the day. *Id.* When asked how many absences would be acceptable, the VE testified that an individual could be absent no more than one day per month. *Id.* The ALJ then asked if these answers were based on the DOT. AR 60. The VE answered they were based on his professional experience, not the DOT. *Id.*

The ALJ ended the hearing stating that he would issue a notice to Plaintiff to show good cause for failure to appear at the hearing and would issue a decision once he received that response. *Id.*

**B.      ALJ's Decision and Plaintiff's Appeal**

On January 10, 2018, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. AR 26-42. This decision became final when the Appeals Council declined to review it

on January 28, 2019.  AR 1-8.  Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  On September 4, 2019, Plaintiff filed the present Motion for Summary Judgment.  On October 11, 2019, Defendant filed a Cross-Motion for Summary Judgment.

## IV.   STANDARD OF REVIEW

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g).  An ALJ's decision to deny benefits must be set aside only when it is "based on legal error or not supported by substantial evidence in the record."  *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation and quotation marks omitted).  It requires "more than a mere scintilla" but "less than a preponderance" of the evidence.  *Id.*; *Trevizo*, 871 F.3d at 674.

The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Trevizo*, 871 F.3d at 675 (citation and quotation marks omitted).  However, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  *Id.* (citation and quotation marks omitted).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation and quotation marks omitted).

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision.  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).  "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion."  *Id.* (citation and quotation marks omitted).  A court may not reverse an ALJ's decision because of a harmless error.  *Id.* at 1111 (citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Id.* (citation and quotation marks omitted).

United States District Court
Northern District of California

**A.  Framework for Determining Whether a Claimant Is Disabled**

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[5]  20 C.F.R. § 404.1520.  The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).  During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(i), (b).  Here, the ALJ determined Plaintiff had not performed substantial gainful activity since May 21, 2015.  AR 31.

At step two, the ALJ must determine, based on medical findings, whether the claimant has

---

[5] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: affective disorder, drug addiction and alcoholism, post-traumatic stress disorder ("PTSD"), major depressive disorder, and history of knee fracture with open reduction internal fixation. AR 31.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 32.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e).

In the RFC assessment, the ALJ assesses the claimant's physical and mental abilities, as well as other abilities affected by the claimant's impairments. *Id.* §§ 404.1545(b)-(d), 416.945(b)-(d). With respect to a claimant's physical abilities, "[a] limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [a claimant's] ability to do past work and other work." *Id.* §§ 404.1545(b), 416.945(b). With respect to a claimant's mental abilities, "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a

work setting, may reduce [the claimant's] ability to do past work and other work." *Id.* §§ 404.1545(c), 416.945(c). Additionally, "[s]ome medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities." *Id.* §§ 404.1545(d), 416.945(d).

Here, the ALJ determined Plaintiff has the RFC to perform light work[6] as follows:

> [B]eing able to lift and/or carry 20 pounds occasionally, and 10 pounds frequently. He can stand, walk, or sit for 6 hours of an 8-hour workday. He can push and/or pull occasionally with the right lower extremity. He would need to use a cane for ambulation. He can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He cannot work around dangerous moving mechanical parts or unprotected heights. He would be limited to simple and routine tasks and making simple work-related decisions. He could frequently interact with supervisors and co-workers. He could also frequently interact with the public, but only on a superficial level, such as greeting customers or directing a customer to the nearest restroom.

AR 34.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, the ALJ determined Plaintiff had no past relevant work. AR 41.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can

---

[6] Pursuant to 20 C.F.R. § 416.967(b), "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines. at 20 C.F.R. pt. 404, Subpt. P, App. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).[7] Here, the ALJ determined Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers, citing the VE's testimony as to the marker II, inspector and hand packager, and bottle packer positions. AR 41-42. The ALJ noted the VE's testimony is inconsistent with the information contained in the DOT, given that it does not address ambulating with a cane or the level of interaction as addressed in the hearing hypothetical, but accepted the VE's testimony based on his 35 years as a vocational counselor. *Id.*

## B. Plaintiff's Arguments

Plaintiff argues the ALJ erred in: (1) weighing the medical opinion evidence; (2) determining that his statements concerning the intensity, persistence and limiting effects of his symptoms are not consistent with the medical evidence; (3) determining that he does not meet Listing 1.02, 12.04 or 12.15; and (4) determining his RFC.

## C. Medical Opinions

Plaintiff argues the ALJ erred by granting partial weight to the opinions of his treating doctor, Jeffrey Seal, and examining doctor, Lesleigh Franklin.

### 1. Legal Standard[8]

When determining whether a claimant is disabled, the ALJ must consider each medical opinion in the record together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *King v. Berryhill*, 2018 WL 4586726, at *11 (N.D. Cal. Sept. 25, 2018). In deciding how much weight to give to any medical opinion, the ALJ considers the extent to which the medical source presents

[7] The Medical-Vocational Guidelines are commonly known as "the grids." *Lounsburry*, 468 F.3d at 1114.
[8] Rules regarding the evaluation of medical opinion evidence were recently updated, but the updates were made effective only for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017). As Plaintiff's claim was filed before 2017, the Court evaluates the medical opinion evidence in his case under the older framework as set forth in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) and in Social Security Ruling 96-2p.

relevant evidence to support the opinion. 20 C.F.R. § 416.927(c)(3). Generally, more weight will be given to an opinion that is supported by medical signs and laboratory findings, and the degree to which the opinion provides supporting explanations and is consistent with the record as a whole. 20 C.F.R. § 416.927(c)(3)-(4).

In conjunction with the relevant regulations, the Ninth Circuit "developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527). Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(c)(2)).

If a claimant has a treatment relationship with a provider, and clinical evidence supports that provider's opinion and is consistent with the record, the provider will be given controlling weight. 20 C.F.R. § 416.927(c)(2). "The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). "If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [SSA] considers specified factors in determining the weight it will be given." *Orn*, 495 F.3d at 631. "Those factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)(i)-(ii)).

> Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and '[o]ther factors' such as the degree of understanding a

physician has of the [Social Security] Administration's 'disability programs and their evidentiary requirements' and the degree of his or her familiarity with other information in the case record.

*Id.* (citing 20 C.F.R. § 404.1527(c)(3)-(6)). Nonetheless, even if the treating physician's opinion is not entitled to controlling weight, it is still entitled to deference. *See Orn*, 495 F.3d at 632 (citing SSR 96–2p,[9] 1996 WL 374188 (July 2, 1996)). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p at 4.

Where an examining doctor's opinion is contradicted by another opinion, an ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

    **2.**    **Analysis**

        **a.**    **Dr. Seal**

Dr. Seal opined in August 2017 that Plaintiff has moderate limitations in interacting with others and marked limitations in understanding, remembering, applying information, and concentrating, persisting or maintaining pace. AR 497. Additionally, he opined Plaintiff has mild limitations in distinguishing between acceptable and unacceptable work performance and maintaining personal hygiene and attire appropriate to the work setting. AR 498. Overall, Dr. Seal opined Plaintiff had moderate limitations in adapting or managing oneself and that he would be absent from work four days or more and would be "off task" more than 30% of the workday. *Id.* The ALJ gave partial weight to Dr. Seal's opinion because "[e]ven though the claimant has been treated by Dr. Seal since February 2016, he was only seen approximately 2-3 times" and "even though the claimant does have some deficits in memory and attention, he also has admitted to slowly completing his personal needs and preparing his own simple meals[.]" AR 40.

Plaintiff argues the ALJ failed to provide clear and consistent reasons for rejecting Dr.

---

[9] "[Social Security Rulings] do not carry the force of law, but they are binding on ALJs nonetheless." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see* 20 C.F.R. § 402.35(b)(1). The Ninth Circuit defers to the rulings unless they are "plainly erroneous or inconsistent with the Act or regulations." *Chavez v. Dep't. of Health and Human Serv.*, 103 F.3d 849, 851 (9th Cir. 1996).

Seal's opinion because, although he noted Plaintiff was only seen approximately 2-3 times, there are no opinions from any other treating doctor.  Pl.'s Mot. at 4.  Plaintiff further argues that the fact that he "admitted" to slow completion of personal needs supports rather than contradicts Dr. Seal's opinion that he suffers from a marked impairment to his ability to concentrate and maintain pace at work and "the slow preparation of one's own simple meals does not show that one would be able to maintain concentration sufficiently to perform unskilled work at the competitive level, in which according to vocational expert Robert Cottle, an individual off task over 15 percent of the day would be unemployable."  *Id.* (citing AR 59).  Plaintiff maintains Dr. Seal's opinion is supported by his own treatment notes, in which he diagnosed Plaintiff with PTSD and depression. *Id.* at 5 (citing AR 400-02).  He also argues Dr. Seal's opinion is consistent with the record as a whole, including: notes from Behavioral Health Care Services between May and October of 2014, which note Plaintiff suffering from depression, lapses in memory, concentration and awareness, and insomnia, *id.* at 6 (citing AR 304, 308, 311, 323, 328); Dr. Franklin, who diagnosed Plaintiff with depression, PTSD, and borderline intellectual functioning while finding a marked impairment to his ability to concentrate, persist and maintain pace, and understand, remember and apply detailed instructions, *id.* (citing AR 367-68, 498); and Dr. Martin, who noted that Plaintiff showed a weak and dreamy mood, poor attention demonstrated by only being able to name four digits forward and three in reverse, fair fund of knowledge demonstrated by naming three out of the last five presidents, poor memory demonstrated by inability to recall any of three words after a brief delay, and he scored a full scale IQ of 59, in the extremely low range of test takers in his peer group, *id.* (citing AR 375, 376-77).  Plaintiff contends the ALJ relied "on a cherry-picked series of factual instances that are not consistent with the record as a whole."  *Id.* at 4.

In response, Defendant argues the ALJ set forth specific reasons for partially discounting Dr. Seal's opinion and the Court must therefore uphold the decision even if the evidence is susceptible to more than one rational interpretation.  Def.'s Mot. at 7.  He notes the ALJ did not reject Dr. Seal's opinion in its entirety "but carefully parsed his findings and conclusions as to Plaintiff's limitations showing where the findings were either consistent or inconsistent with the evidence in the record."  *Id.* at 6-7.

1       The Court finds the ALJ's decision regarding Dr. Seal's opinion must be upheld. First, it

2   is undisputed that Dr. Seal saw Plaintiff "approximately 2-3 times." The frequency of treatment

3   and the length, nature and extent of the treatment relationship are relevant when weighing treating

4   opinion. 20 C.F.R. § 416.927(c)(2)(i), (ii); *Larkins v. Colvin*, 674 F. App'x 632, 633 (9th Cir.

5   2017) (ALJ properly rejected treating doctor's opinion because the doctor "had limited contact

6   with the claimant"). Thus, the limited treatment time Dr. Seal provided Plaintiff was a valid

7   reason to discount the opinion. Further, although Dr. Seal indicated Plaintiff had marked

8   limitations in understanding, remembering, applying information, and concentrating, persisting, or

9   maintaining pace, the ALJ noted that, "[o]n examination, [Plaintiff] was also '100 Intelligible',

10  demonstrated fair fund of knowledge, and was able to name 3 of the last 5 presidents (Exhibit

11  5F/4)." AR 40. Further, his "insight and judgment was fair, with organized, coherent, linear, and

12  goal directed thought process (Id/4)." *Id.* (citing AR 372-80). The ALJ noted earlier in his

13  decision that Dr. Seal had indicated that Plaintiff "was also was not able to sustain his attention

14  well enough to remember short strings of information," that "there were notable problems with

15  attention and concentration" and that he was "easily distracted." AR 33. Dr. Seal's findings were

16  inconsistent with other examination findings, where Plaintiff was observed to have "been able to

17  maintain a conversational exchange with examiners," and that by way of example "he was

18  engaged with his interviewer, open to conveying his perception, and shared his experiences[.]"

19  AR 33. Such inconsistencies between Dr. Seal's opinion expressed on a check-box form and other

20  clinical findings in the medical record were valid reasons to discount the opinion. *Magallanes v.*

21  *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) ("the ALJ need not accept a treating physician's opinion

22  which is 'brief and conclusionary in form with little in the way of clinical findings to support [its]

23  conclusion'") (citation omitted); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019-20

24  (9th Cir. 1992) (an "ALJ need not accept an opinion of a physician–even a treating physician–if it

25  is conclusionary and brief and is unsupported by clinical findings; here, the objective finding

26  revealed "no significant motor loss, muscle weakness or sensory or reflex loss, with the exception

27  of loss of the right achilles reflex").

28      Plaintiff's argument that the ALJ "cherry-picked series of factual instances" is without

merit. The ALJ only partially discounted Dr. Seal's opinion, noting that while the medical evidence in the record demonstrated that Plaintiff had "some deficits in memory and attention," he admitted to "slowly completing his personal needs and preparing his own simple meals (Exhibits 5F/3-4 and 6F/1)," which was consistent with Dr. Seal's conclusion that Plaintiff had "mild limitations in distinguishing between acceptable and unacceptable work performance and maintaining personal hygiene and attire appropriate to the work setting (Id/5)." AR 40. Thus, the ALJ did not reject Dr. Seal's opinion in its entirety but parsed his findings and conclusions as to Plaintiff's limitations, showing where the findings were either consistent or inconsistent with the evidence in the record. Further, although Plaintiff argues there was other evidence in the record that was consistent with Dr. Seal's conclusions, the Court must uphold the ALJ's decision even "where the evidence is susceptible to more than one rational interpretation." *Magallanes*, 881 F.2d at 750 (citing *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)). It is the ALJ, not the Court, that must resolve determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Accordingly, because the ALJ provided specific and legitimate reasons for his evaluation of Dr. Seal's opinion, and substantial evidence supports the ALJ's findings, the decision must be affirmed.

### b.    Dr. Franklin

With respect to Dr. Franklin, the ALJ agreed with the psychologist's indication that Plaintiff had "moderate limitations in understanding, remembering, and carrying out short and simple instructions and getting along with others," and that "he had problems with immediate and delayed memory." AR 39 (citing AR 364). However, with respect to Dr. Franklin's indication that Plaintiff had "marked limitations in: understanding remembering, and carrying out detailed instructions, maintaining attention and concentration for 2-hour segments, performing at a consistent pace, responding appropriately to changes in a routine work setting and dealing with normal work stressors, and completing a normal workday and workweek without interruptions

20

from psychologically based symptoms," the ALJ noted that "though [Plaintiff] worked a slower rate than his peers did, he was able to maintain a conversational exchange with his examiners" and "was able to verbalize an understanding his medication and discharge instructions[.]" *Id.* (citing AR 364, 413, 421, 431, 438).

Plaintiff again argues the ALJ "cherry picked" facts in his consideration of Dr. Franklin's opinion and that "[e]ven if the court were to accept that the facts cited by the ALJ to discredit Dr. Franklin's report, these facts are not clear or convincing reasons to reject a report based on testing, a thorough interview, and a review of available records." Pl.'s Mot. at 8. However, inconsistencies between an opinion and the medical evidence in the record are valid reasons to discount the opinion. *Bayliss*, 427 F.3d at 1216 (holding that an ALJ need not accept the opinion of a doctor that is inadequately supported by clinical findings); *Creech v. Colvin*, 612 F. App'x 480, 481 (9th Cir. 2015) ("ALJ permissibly discounted the contradicted opinion of [claimant's] treating physician," noting that his "opinion was not supported by other medical evidence, especially the physical consultative examiner's report finding that Plaintiff had a wide range of pain-free motion") (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1159 (9th Cir. 2014)). In addition to the evidence above, the ALJ observed that Plaintiff "experienced some difficulty maintaining housing," but he "was able to appear at his examinations dressed appropriately and manage his funds by himself." AR 39. The ALJ also noted that Plaintiff stated he was able to "ride a bike for exercise," spent time "walking more than riding his bike," and did "light household chores with limitations." AR 38. Plaintiff's ability to do daily activities and take care of his personal needs provides an additional, valid reason for partially discounting Dr. Franklin's opinion. *Hensley v. Colvin*, 600 F. App'x 526, 527 (9th Cir. 2015) (when rejecting treating psychologist's opinion, the ALJ properly found that the "opinion was inconsistent with [claimant's] reported daily activities, which included attending to personal care, cooking, cleaning, shopping for groceries, taking the bus and swimming for exercise"); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (concluding that claimant's testimony about her daily activities may be seen as inconsistent with the presence of a disabling condition).

Plaintiff notes that Dr. Franklin rated his IQ score at 48. Pl.'s Mot. at 8. However, the

ALJ noted that Dr. Martin scored Plaintiff's IQ at 59. AR 37 (citing AR 377). The medical

record also reflects that Dr. Seal noted that in 2010 Plaintiff had an IQ score of 79. AR 483. The

ALJ further noted that Dr. Martin "believed that motivational factors might have contributed to the

claimant's work performance" and that "the results were considered a 'questionable representation

of the claimant's cognitive abilities.'" AR 37, 376-77. These inconsistencies were valid reasons

to discount the scores. *Sampson v. Colvin*, 2015 WL 3970415, at *5 (C.D. Cal. June 29, 2015)

("Substantial evidence supports the ALJ's finding that Plaintiff's IQ scores were invalid due to

Plaintiff's over-reporting and poor effort and motivation during the administration of the two IQ

tests.").

Plaintiff also argues the ALJ committed error by affording greater weight to the opinions

of Dr. Morris and Dr. Martin over Dr. Franklin's. Pl.'s Mot. at 7-8. However, the ALJ set out

valid reasons based on evidence in the record for relying on these opinions over those of Dr. Seal

and Dr. Franklin. With respect to Dr. Martin, the ALJ noted:

> I give this opinion great weight because it is consistent with the record
> as a whole. Dr. Martin supported his opinion with a thorough
> explanation, including the claimant's full-scale IQ score of 59
> (Exhibit 5F/6). In addition, he noted that there were possible
> motivational factors that contributed to the claimant's work
> performance (Id). During this evaluation, the claimant was ruled out
> for cognitive disorder, diagnosed with depressive disorder, pain
> disorder due to psychological factors and general medical condition,
> and cannabis abuse (Id/7). In addition, the claimant demonstrated
> poor attention and memory (Id/4). However, he was able to count
> change, name 3 of the last 5 presidents, and demonstrated fair insight,
> judgment, and fund of knowledge (Id). Finally, the limitations in
> interacting with others is supported by the claimant's history of
> paranoid ideation (Id/5).

AR 40. Though Plaintiff asserts that Dr. Martin's and Dr. Franklin's opinions "reinforce" each

other, Pl.'s Mot. at 12, the difference between Dr. Martin's finding of "moderate" limitations

reflects that the mental impairment is not sufficiently severe as to have a significant impact on

Plaintiff's ability to perform work activity. *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007)

("We have not previously held mild or moderate depression to be a sufficiently severe non-

exertional limitation that significantly limits a claimant's ability to do work beyond the exertional

limitation"); *Graham v. Colvin*, 2015 WL 433022, at *4 (W.D. Wash. Feb. 2, 2015) ("Contrary to

plaintiff's argument, a 'moderate' impairment in one area is not inconsistent with the ALJ's finding that plaintiff did not have a severe mental impairment that significantly limited her ability to work"). The Social Security regulations do not provide a standard definition of the term "moderate." *Serna v. Astrue*, 2008 WL 5179033, at *3 (C.D. Cal. Dec. 9, 2008) (citing 20 C.F.R. § 416.902a(c)(4)); *Stenson v. Astrue*, 2012 WL 1154400, at *8 (S.D. Cal. Mar. 15, 2012). However, the record itself notes that the difference between "moderate" and "marked" limitations as a moderate limitation allows that the "ability to function is fair," while a marked limitation indicates the "ability to function seriously limited." AR 497. Further, courts have held that a plaintiff "found to have a moderate limitation in her ability to respond appropriately to work pressures in a usual work setting would still be able to satisfactorily function in this area." *Serna*, 2008 WL 5179033 at *3 (citing *Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006)); *see also Holland v. Colvin*, 2016 WL 928665, at *3 (C.D. Cal. Mar. 4, 2016) (affirming ALJ's decision where the ALJ interpreted doctor's use of "moderate" to mean that plaintiff could still function satisfactorily in the work-setting); *Arriola v. Astrue*, 2008 WL 4926961, at *4 (C.D. Cal. Nov. 14, 2008) (noting that "moderate" is "more than a slight limitation in this area but the individual is still able to function satisfactorily"). Moreover, courts in the Ninth Circuit have found that "[m]oderate mental functional limitations—specifically limitations in social functioning and adaptation—are not per se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks." *McLain v. Astrue*, 2011 WL 2174895, at *6 (C.D. Cal. June 3, 2011); *Koehler v. Astrue*, 283 F. App'x 443, 445 (9th Cir. 2008) (holding that ALJ's finding that plaintiff lacked a severe mental impairment was proper despite "diagnosis of a 'moderate' degree of limitation in one's ability to respond to changes in the workplace setting"); *Rogers v. Comm'r of Soc. Sec.*, 2011 WL 445047, at *12 (E.D. Cal. Jan. 25, 2011) (finding that ALJ's limitation to simple, repetitive work captured moderate limitations in social functioning).

The Court also finds the ALJ properly relied on Dr. Martin's opinion as his findings were based on his own clinical findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion alone constitutes substantial evidence because it rests on his own independent examination of the claimant); *Orn*, 495 F.3d at 632 (When an examining physician

provides "independent clinical findings that differ from the findings of the treating physician," such findings are "substantial evidence"; "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence" or "(2) findings based on objective medical tests that the treating physician has not herself considered"). Similarly, the ALJ set forth valid reasons for giving Dr. Morris's opinion great weight. AR 38-39; AR 72-74. After setting out the psychologist's findings, the ALJ found the assessment "consistent with the medical evidence of record and the residual functional capacity." AR 38-39. The ALJ's RFC assessment and Dr. Morris's assessment were consistent in finding that Plaintiff "would be limited to simple and routine tasks and making simple work-related decisions," "could frequently interact with supervisors and co-workers," and could "frequently interact with the public, but only on a superficial level, such as greeting customers or directing a customer to the nearest restroom." AR 34, 72-74. Because Dr. Morris's findings were based on specific medical evidence in the record (*see* AR 67-68), the Court finds the ALJ properly relied on this opinion. *Thomas v. Barnhart*, 278 F.3d 948, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"); *Hensley*, 600 F. App'x at 527 (ALJ properly gave "little weight" to treating psychologist's opinion and "more weight" to the contrary opinions of two non-examining doctors because their "conclusions were consistent with other independent evidence in the record"); *Tonapetyan*, 242 F.3d at 1149 (finding that contrary opinion of a non-examining medical expert may constitute substantial evidence when it is consistent with other independent evidence in the record); *Bray v. Astrue*, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (ALJ properly relied "in large part on the DDS physician's assessment" in assessing the claimant's RFC and rejecting treating doctor's testimony regarding the claimant's functional limitations).

Accordingly, because the ALJ provided specific and legitimate reasons for his evaluation of Dr. Franklin's opinion and substantial evidence supports the ALJ's findings, the decision must be affirmed.

**D.      Credibility**

With respect to Plaintiff's assertions that he was unable to perform work activity because of his pain and symptoms, the ALJ found his testimony inconsistent and not fully supported by the record. AR 38. The ALJ found Plaintiff's condition is controlled or responsive to treatment, he demonstrated "mild" physical exams, and his activities of daily living do not substantiate the degree of severity alleged. *Id.*

Plaintiff argues the ALJ is incorrect because, even though the ALJ found treatment has helped in the past, his inability to regularly attend medical appointments "leaves him in chronic pain, in a way that is not helped by his aversion to any pills, leaving him without ibuprofen." Pl.'s Mot. at 11 (citing AR 485, 490). He notes that, although he at one point told Dr. Seal that medication has helped him sleep, "multiple treating doctors have observed his sleepiness during their appointments, including an appointment at Lifelong that the ALJ cited only two paragraphs prior to this portion of his decision." *Id.* (citing AR 37, 38, 454). Plaintiff also notes that, although the ALJ pointed out that he rides a bike, he finds riding a bike to be easier on his knees than walking and "riding a bike uses different muscles and puts stress on different joints than walking or standing up, which is obvious to anyone who has transitioned from riding a bike to begin walking and felt relief in their thighs." *Id.* Finally, Plaintiff argues that a finding that compliance with recommended treatment may have improved his symptoms does not, on its own, show that he is not disabled or that he is not credible. *Id.* at 12. He notes that two examining doctors found he has an extremely low IQ and his treating doctor noted that he had low cognitive function. *Id.*

In response, Defendant argues the ALJ properly determined Plaintiff's statements were inconsistent with the medical evidence because the evidence shows a positive response to medication and treatment, Plaintiff's assertions of disabling pain and symptoms are not supported by objective medical evidence, and there are inconsistencies between his daily activities and assertions of disabling symptoms. Def.'s Mot. at 12-14.

**1.      Legal Standard**

Congress expressly prohibits granting disability benefits based solely on a claimant's

subjective complaints. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 416.929(a) (an ALJ will consider all of a claimant's statements about symptoms, including pain, but statements about pain or other symptoms "will not alone establish" the claimant's disability). "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). An ALJ is, however, required to make specific credibility findings. *See* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (the credibility finding "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight").

A two-step analysis is used when determining whether a claimant's testimony regarding their subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, it must be determined "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc); 42 U.S.C. § 423(d)(5)(A)). A claimant does not need to "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant has met the first step and "there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen*, 80 F.3d at 1281). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. Courts must not engage in second-guessing, where the ALJ "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record." *Fair*, 885 F.2d at 604. However, "a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain." *Light v. Soc. Sec. Admin.*, 119 F.3d 789,

792 (9th Cir. 1997) (citing *Lester*, 81 F.3d at 834; *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) (per curiam) ("'Excess pain' is, by definition, pain that is unsupported by objective medical findings.").

Factors an ALJ may consider in weighing a claimant's credibility include: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his] testimony and [his] conduct, claimant's daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas*, 278 F.3d at 958-59 (quoting *Light*, 119 F.3d at 792). An ALJ's credibility finding must be properly supported by the record, and sufficiently specific to ensure a reviewing court he did not "arbitrarily discredit" a claimant's subjective testimony. *Id.* at 958 (citing *Bunnell*, 947 F.2d at 345-46).

### 2. Analysis

The ALJ articulated several reasons for finding that Plaintiff's subjective allegations were not wholly reliable. AR 34-35. The ALJ discounted some of his statements as inconsistent with medical evidence showing that his "condition is controlled or responsive to treatment," including that certain medications made his symptoms "better," "helpful," and improved his sleep, that his right leg pain was "improved," and that physical therapy session seemed to help. AR 38 (citing AR 331, 400-01, 404, 451, 485, 490-91). A positive response to medication and treatment is a valid reason for discounting complaints of disabling pain and symptoms. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for" social security benefits); *Tommasetti*, 533 F.3d at 1040 (ALJ may infer that claimant's "response to conservative treatment undermines [claimant's] reports regarding the disabling nature of his pain."). And, even if Plaintiff's activities were not particularly extensive, the ALJ's conclusion that he was not as limited as he claimed was a reasonable and valid basis for discounting his self-reported symptoms. *Molina*, 674 F.3d at 1112-13 ("Even where those activities suggest some difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *Valentine*, 574 F.3d at 694

27

(the ALJ properly determined that the claimant "demonstrated better abilities than he acknowledged in his written statements and testimony" and that his "non-work activities . . . are inconsistent with the degree of impairment he alleges").

The ALJ also noted that Plaintiff's assertions of disabling pain and symptoms were inconsistent with the medical record:

> For example, Annie Khan, M.D. found the claimant's right knee had "mild" joint line tenderness (Exhibit 9F/12). In addition, the doctor found no erythema, no swelling, no patellar tenderness, and negative anterior/posterior drawer (Id). In addition, an X-ray of his knee showed evidence of good healing of a previous tibial fracture with no abnormalities (Exhibit 1F/3 and 6). The claimant also admitted to being non-compliant with follow up care (Exhibit 3F/3). He also admitted to missing physical therapy appointments (Id). The claimant also admitted throughout the record that he felt signs of improvement. For example, the claimant admitted that though not fully gone, certain medications have made symptoms "better" (Exhibits 7F/13 and 9F/45). In fact, he admitted to trying Valium and found it "helpful" (Id). The claimant's sleep was poor, but medication has helped it improve (Exhibits 7F/12, 16, and 9F/44). The claimant's small abscesses on his right knee were "getting better" (Exhibit 3F/1). Finally, the claimant admitted his right leg was in pain, but it was somewhat "improved" (Exhibit 9F/39). He complained in May 2017 of right hip pain for the past 2 months that resulting from a lot of walking, but he had 5 physical therapy sessions a while ago that seemed to help (Id/5).

AR 38. Such inconsistencies between Plaintiff's testimony and the medical record are valid reasons to discount statements of disabling pain and symptoms. 20 C.F.R. § 416.929(c)(2); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("ALJ pointed to specific evidence in the record, including numerous medical reports, establishing that the claimant's complaints were not credible").

Finally, the ALJ properly considered inconsistencies between daily activities and Plaintiff's assertions of disabling symptoms. The ALJ noted:

> In addition, the claimant's own admissions of activities of daily living do not substantiate the degree of severity alleged. The claimant alleged that he cannot even stand up (Exhibit 4F/2). However, even in August 2017, the claimant admitted that he is able to ride a bike for exercise and that he carries heavy things on his bike (Exhibit 9F/1 and 13). In fact, he admitted to riding on his bike for days until he gets tired (Id/36). He also admitted to walking more than riding his bike (Id/23). Additionally, the claimant alleged that he does not do any household chores because of his pain and limited movement (Exhibit

6E/4), in other parts of the record, he also admitted to doing light household chores with limitations (Exhibit 5F/4).

AR 38. Although Plaintiff's activities may have been limited by his impairments, it was proper for the ALJ to find they were not as limiting as he alleged them to be. *See Berry v. Astrue*, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (finding that a claimant's self-reported activities suggested a higher level of functionality than claimant alleged); *Molina*, 674 F.3d at 1112-13 (ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"). Thus, even if Plaintiff's activities were not particularly extensive, the ALJ's conclusion that he was not as limited as he claimed was a reasonable and valid basis for discounting his self-reported symptoms. *Molina*, 674 F.3d at 1112-13 ("Even where those activities suggest some difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *Valentine*, 574 F.3d at 694 (the ALJ properly determined that the claimant "demonstrated better abilities than he acknowledged in his written statements and testimony" and that his "non-work activities . . . are inconsistent with the degree of impairment he alleges").

Plaintiff's contention that bicycle riding is "easier on the knees than walking" does not rebut the ALJ's accurate observation that Plaintiff stated that he "is usually outside and admits he can walk and use public transportation," that he "admitted to going to parks, the community center, and church on a regular basis," and that he "stated that he walks more than he rides his bike" even though in August 2017 he "admitted that he is able to ride a bike for exercise and that he carries heavy things on his bike. (Exhibit 9F/1 and 13). In fact, he admitted to riding on his bike for days until he gets tired (Id/36)." AR 38; *see* AR 208, 225-26, 469. This evidence supports the ALJ's finding that Plaintiff's self-description of his walking and bicycling were inconsistent with his other assertions of being totally disabled from pain and symptoms relating to his ability to walk beyond the limitations the ALJ incorporated into his RFC assessment.

Because the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's testimony, and his decision is supported by substantial evidence, the Court finds the ALJ's decision must be affirmed.

**E.      Step Three – Listing of Impairments**

The ALJ determined the combined clinical findings from each of Plaintiff's impairments did not "reach the level of severity contemplated in the listings." AR 32. Plaintiff argues the ALJ erred because he meets the requirements for listings 1.02, 12.04 and 12.05. Pl.'s Mot. at 12-14.

**1.      Legal Standard**

At step three in the sequential process, an ALJ must consider whether a claimant's conditions meet or equal any of the impairments outlined in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). The listings describe impairments that "would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original). If a claimant's "impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1520(d). The claimant bears the burden of establishing a prima facie case of disability under the listings. *See Thomas*, 278 F.3d at 955; 20 C.F.R. § 404.1520(a)(4)(iii).

An impairment meets a listing when *all* the medical criteria required of that listing is satisfied. 20 C.F.R. § 404.1525(c)(3); *Tackett*, 180 F.3d at 1099 ("To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim."); *Sullivan*, 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment. . . ." *Tackett*, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526(a)).

"If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Id.* (citing 20 C.F.R. § 404.1526(a)). However, "'[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of

functional problems is not enough to establish disability at step three.'"  *Id.* at 1100 (quoting 20

C.F.R. § 404.1526(a)).  Further, an impairment does not meet the criteria of a listing based only on

a diagnosis.  20 C.F.R. § 404.1525(d); *Sullivan*, 493 U.S. at 530 ("For a claimant to show that his

impairment matches a listing, it must meet all of the specified medical criteria.  An impairment

that manifests only some of those criteria, no matter how severely, does not qualify."); *Moncada v.*

*Chater*, 60 F.3d 521, 523 (9th Cir. 1995).

### 2.    Analysis

#### a.    Listing 1.02

Listing 1.02 refers to "Major dysfunction of a joint(s) (due to any cause)."  It is

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.02.  The ALJ found "[t]here is no evidence in the record

which demonstrates this criteria," noting that Plaintiff "demonstrated steady, normal gait with

sensory and motor skills intact."  AR 32 (citing AR 266-76).

Plaintiff argues the ALJ committed error because, in the records the ALJ cites, there is

reference made to a compression plate in the proximal tibia.  Pl.'s Mot. at 13 (citing AR 269).

Plaintiff also notes that during an examination performed by Dr. Tang on January 25, 2016, he

was unable to tandem walk or do a toe-heel stand due to right knee pain, and Dr. Tang noted that

Plaintiff had a prescribed cane that was "medically necessary," a limited range of motion in his

right knee, and that "the claimant is not more than 50% weightbearing."  *Id.* (citing AR 384).

Plaintiff notes that the ALJ brought this up in the portion of his decision granting great weight to

31

Dr. Tang's opinion, yet it is absent from his analysis of listing 1.02. *Id.* (citing AR 40) ("The claimant does have a history of a right knee fracture for five years (Exhibit 6F/3). In fact a prior open reduction internal fixation was required and cannot be more than 50% weight bearing."). Plaintiff argues: "Whether or not the presence of a compression plate in the tibia satisfies the letter of listing 1.02, the fact that there is extensive evidence that [he] uses a medically necessary cane to ambulate, and that his right knee is not more than 50% load bearing are substantial evidence that plaintiff's symptoms functionally equal the listing." *Id.* (citing AR 343, 364, 384, 389).

In response, Defendant argues Plaintiff's reliance on Dr. Tang's January 2016 report fails to consider the other portions of that report which directly contradict his argument. Def.'s Mot. at 16-17.

To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. *See Tackett*, 180 F.3d at 1099. Although Dr. Tang noted a limited range of motion in his right knee and that he was not more than 50% weightbearing, he also noted that Plaintiff "did not have any acute muscle spasms and exhibited strength of 5/5 in all four extremities and grips"; could "stand and walk up to 6 hours," "sit without limitations," and lift and carry up to 20 pounds occasionally and 10 pounds frequently"; and was "capable of occasionally climbing, balancing, stooping, kneeling, crouching, and crawling," and "capable of reaching, handling, fingering, and feeling without limitations." AR 385. As such, while Plaintiff may meet *some* of criteria for listing 1.02, the Court finds Plaintiff has failed to meet his burden of establishing that he meets *all* the criteria. *See Doney v. Berryhill*, 728 F. App'x 687, 689 (9th Cir. 2018) ("The ALJ did not err by concluding, at step three of the sequential evaluation process, that Doney failed to meet or equal Listing 1.02 because the medical evidence did not demonstrate that she demonstrated an inability to ambulate effectively."). Accordingly, the ALJ's decision must be affirmed.

### b.     Listings 12.04 and 12.15

Listing 12.04 refers to depressive, bipolar and related disorders, which are

> characterized by an irritable, depressed, elevated, or expansive mood,
> or by a loss of interest or pleasure in all or almost all activities, causing
> a clinically significant decline in functioning. Symptoms and signs

32

may include, but are not limited to, feelings of hopelessness or guilt, suicidal ideation, a clinically significant change in body weight or appetite, sleep disturbances, an increase or decrease in energy, psychomotor abnormalities, disturbed concentration, pressured speech, grandiosity, reduced impulse control, sadness, euphoria, and social withdrawal.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.04.

Listing 12.15 refers to trauma- and stressor-related disorders, which are

characterized by experiencing or witnessing a traumatic or stressful event, or learning of a traumatic event occurring to a close family member or close friend, and the psychological aftermath of clinically significant effects on functioning. Symptoms and signs may include, but are not limited to, distressing memories, dreams, and flashbacks related to the trauma or stressor; avoidant behavior; diminished interest or participation in significant activities; persistent negative emotional states (for example, fear, anger) or persistent inability to experience positive emotions (for example, satisfaction, affection); anxiety; irritability; aggression; exaggerated startle response; difficulty concentrating; and sleep disturbance.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.15.

The ALJ determined that Plaintiff did not satisfy the "paragraph B" criteria for these listings, which require that a claimant's "mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves."[10] AR 32. The ALJ found Plaintiff has only moderate limitation in understanding, remembering or applying information; moderate limitation in interacting with others, moderate limitation in concentrating, persisting or maintaining pace; and moderate limitation in adapting or managing oneself. AR 32-33. Because his mental impairments do not cause at least two marked limitations or one extreme limitation, the ALJ found Plaintiff did

---

[10] The listings typically have three sets of criteria: paragraphs A, B, and C. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(A). The criteria in Paragraph A (except 12.05) "includes the medical criteria that must be present in [the] medical evidence," paragraph B "(except 12.05) provides the functional criteria [assessed], in conjunction with a rating scale" to evaluate how the claimant's mental disorder limits his or her functioning, and paragraph C provides criteria used to evaluate "serious and persistent mental disorders." Id. Only some of the eleven diagnostic categories of mental disorders have paragraph C criteria and for those categories, the "mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." Id. If the claimant satisfies the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) are satisfied, the claimant has a listed impairment. Id. Intellectual disorder (12.05) "has two paragraphs, designated A and B, that apply only to intellectual disorder." Id.

not satisfy the listing requirements.  AR 33.

Plaintiff argues the ALJ committed error for the same reason discussed in the medical opinions section above, namely that his rejection of portions of the reports of Dr. Seal and Dr. Franklin "was predicated on isolating specific instances of the record in order to ignore objective medical findings."  Pl.'s Mot. at 14.  He maintains this can be seen in his discussion of the paragraph B criteria "where after noting that plaintiff's objective testing showed that he has serious deficits to his fund of knowledge, intelligence, abstraction, as well as immediate and delayed memory, the ALJ relies on the fact that 'claimant was able to converse in a manner sufficient for the evaluator to complete his interview,' and that he verbalized understanding of discharge and prescription instructions to find only a moderate limitation to understanding, remembering and applying information."  *Id.* (quoting AR 32).   Plaintiff notes the ALJ acknowledged "there were multiple objective tests performed by examining doctors that showed that [he] has an extremely low IQ and extremely impaired memory, and yet, attempted to call those findings into question by noting that the plaintiff did not behave so disruptively that his doctors could not even examine him and that he is capable of saying 'yes.'"  *Id.*  He maintains that "[s]imilar tactics are used to find a moderate limitation to concentration, where the finding that 'the claimant has been able to maintain a conversational exchange with examiners,' is given as a counter to all the other relevant evidence on the record."  *Id.* (quoting AR 33).  He argues "[t]hese findings are not based on substantial evidence, but mere instances in which the plaintiff accomplished things that people with marked impairments to understanding, memory and concentration would be able to do."  *Id.*

In response, Defendant argues the ALJ properly addressed and partially discredited the opinions of Dr. Seal and Dr. Franklin, and Plaintiff's contention that these opinions should be relied upon to establish that he satisfies the paragraph B criteria of the listings is without merit.  Def.'s Mot. at 18.

The Court finds the ALJ did not err by concluding Plaintiff failed to meet or equal listings 12.04 and 12.15.  As discussed above, the ALJ properly rejected the opinions of Dr. Seal and Dr. Franklin in part.  And, because the ALJ properly considered listings 12.04 and 12.15 with respect

to this evidence, he did not err in finding that Plaintiff dos not meet the applicable criteria.  *See*

*Littledeer v. Colvin*, 2013 WL 5272812, at *11 (D. Or. Sept. 17, 2013) ("As discussed above, the

ALJ properly rejected the opinions of Ms. Van Epps and Dr. Williams.  The ALJ considered each

Listing with respect to the credible evidence in the record and found that Littledeer did not meet

the applicable criteria.  Tr. 24.  Because he did not err in his evaluation of the medical evidence,

the ALJ did not err in finding that Littledeer did not meet a listed impairment."); *Huecias v.*

*Colvin*, 2015 WL 1005410, at *3 (C.D. Cal. March 6, 2015) ("The ALJ decision must be affirmed.

The ALJ properly considered the medical evidence, properly rejected the opinion of Plaintiff's

treating physician and properly concluded that Plaintiff's impairments did not meet or equal a

listing.").  The ALJ considered the evidence in Dr. Seal's and Dr. Franklin's opinions that

established limitations, but he found the record as a whole did not establish limitations that met the

listings, including Plaintiff's normal speech and disposition, his openness to conveying his

perception and sharing his experiences, his ability to converse in a manner sufficient for the

evaluator to complete his interview, to verbalize understanding of his prescription information and

discharge instructions, his ability to manage funds, his ability to prepare meals by himself, and his

stated goals to get his own apartment and a job.  AR 32-33.

Plaintiff also argues the ALJ committed error because he failed to conduct an analysis of

the paragraph A criteria for the listings.  Pl.'s Mot. at 14.  However, the criteria for both

paragraphs A and B must be satisfied.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(A)(2);

*Dixon v. Saul*, 2019 WL 4751896, at *5 (N.D. Cal. Sept. 30, 2019).  Thus, even if Plaintiff meets

the criteria for paragraph A, the ALJ correctly found he does not meet the listings because he does

not satisfy the criteria for paragraph B.[11]

Accordingly, the ALJ's decision must be affirmed.

## F.     RFC

As noted above, the ALJ determined that Plaintiff had the RFC to perform light work with

limitations.  AR 33-34.  Plaintiff argues "[t]his RFC is based on the improper foundation of

---

[11] Plaintiff does not address, and the Court therefore does not consider, whether he meets the
requirements of paragraph C.

35

dismissing the opinions of multiple doctors and the statements made by [Plaintiff] about his own symptoms. Had the ALJ considered the overall record, he would have determined that [Plaintiff's] severe mental impairments prevent him from meeting the basic mental demands of unskilled work on a sustained basis in accordance with Social Security Ruling 85-15." Pl.'s Mot. at 15. He maintains "[t]he extensive evidence of [his] extremely low IQ, poor concentration, and documented need for breaks in order to walk or stand for six hours all go unaddressed in the ALJ's RFC," any such limitations "prevent him from performing any work at SGA levels that exist in significant numbers in the national economy." *Id.* at 16. In response, Defendant argues the ALJ's RFC assessment was based on substantial evidence and included established limitations. Def.'s Mot. at 19.

RFC is the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed by considering all the relevant evidence in a claimant's case record. *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). When a case is before an ALJ, it is the ALJ's responsibility to assess a claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). "Generally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 416.927(c)(4).

The Court finds the ALJ did not err in his RFC assessment. While Plaintiff bases his argument on the ALJ's "dismissing the opinions of multiple doctors and the statements made by [Plaintiff] about his own symptoms," as discussed above, the ALJ's findings were based upon substantial evidence in the record. Because the ALJ's analysis on these issues was legally sufficient, the Court must find that the ALJ's RFC assessment was correct. *Batson*, 359 F.3d at 1197 (In determining a plaintiff's RFC, the ALJ is not required to incorporate the claimant's properly rejected testimony or statements nor is he "required to incorporate evidence from the opinions of [the claimant's] treating physicians, which were permissibly discounted"); *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("because the ALJ provided specific and legitimate reasons supported by substantial evidence to give less weight to [the examining physician's]

36

opinion, we conclude that the ALJ did not err in basing the RFC on [the DDS non-examining physician's] findings rather than [the examiner's]") (alterations in original).  Further, the Court notes that RFC is an administrative finding, not a medical determination, and need not match any one physician's opinion.  *See* 20 C.F.R. § 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner"); *Vertigan*, 260 F.3d at 1049 ("[i]t is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity").  The ALJ is responsible for assessing a claimant's RFC based on the record as a whole.  *See* 20 C.F.R. § 416.945(a).

Accordingly, the Court finds substantial evidence supports the ALJ's RFC assessment, it is free of legal error, and the decision must be affirmed.

## VI. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: November 18, 2019

THOMAS S. HIXSON
United States Magistrate Judge